**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

Peter J. Polinski,

Plaintiff,

v. 6:26-CV-0817 (AMN/MJK)

Avondale Premier Collection,

Defendant.

---

Peter J. Polinski, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Anne M. Nardacci, U.S. District Court Judge:

**ORDER and REPORT-RECOMMENDATION**

Polinski commenced this action on April 27, 2026 by filing a Complaint. ("Compl.," Dkt. 1). Polinski also filed an application for leave to proceed *in forma pauperis* ("*IFP*"). (Dkt. 2). The Clerk has sent the Complaint and *IFP* application to this Court for review.

## I. *IFP* APPLICATION

Polinski declares in his *IFP* application that he is unable to pay the filing fee. (Dkt. 2). After reviewing his application, the Court finds that Polinski is ineligible for *IFP* status.

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. *See* 28 U.S.C. § 1914(a). A court is authorized, however, to grant *IFP* status if it determines that the plaintiff is unable to pay the required fee. *See* 28 U.S.C. § 1915(a)(1).[1] Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed *IFP*, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. *See* 28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed *IFP* rests within the sound discretion of the court. *See Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The Court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting *IFP* status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment

[1] The language of that section is ambiguous because it suggests an intent to limit availability of *IFP* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *IFP* status available to any litigant who can meet the governing financial criteria. *See Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (*per curiam*) ("Section 1915(a) does not require a litigant to demonstrate absolute destitution[.]"). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an *IFP* application, 28 U.S.C. § 1915 requires that a plaintiff submit an affidavit reflecting their assets. *See* 28 U.S.C. § 1915(a)(1). In his *IFP* application, Polinski states that he is not "currently employed in traditional commerce" and has not been "employed in traditional commerce for over twenty years." (Dkt. 2, pg. 4, ¶¶ 4, 6). Polinski claims that he has "no current employment income, wages, salary, commissions, tips, or other earned income from an employer" or from "self-employment or business activities at this time." (*Id.* at ¶¶ 5, 7). Polinski also reports that he has "documented financial resources of approximately Twenty Two Million Dollars ($22,000,000) as reflected in IRS Form 1041 (U.S. Income Tax Return for Estates and

Trusts) and federal income tax returns prepared by Turbo Tax specialists." (*Id.* at ¶ 8). However, Polinski alleges that the "funds are not currently in [his] possession or control." (Id. at ¶ 9). He provides no documentation to support this allegation. Polinski also states that he has "unlimited private credit as the true creditor in commercial transactions." (*Id.* at 5, ¶ 19). Finally, Polinski also alleges that "[a]ll of [his] available resources are devoted to basic necessities and caring for [his] grandmother." (*Id.* at 6, ¶ 28). He does not describe these resources. He also avers that he "live[s] at home mom and dad provide meals and bed." (Dkt. 2, p. 11, ¶ 8).

Based upon the information provided in his sworn *IFP* application, this Court is not persuaded that Polinski is "unable to pay the filing fee," or that paying the filing fee would pose "serious hardship" for him. *Mulqueen v. Herkimer Cnty.*, No. 22-CV-1301 (TJM/ATB), 2023 WL 184514, at *2 (N.D.N.Y. Jan. 13, 2023) (internal quotation marks omitted). Federal courts often consult the "federal poverty guidelines to determine whether a plaintiff would be subject to serious hardship if compelled to pay a filing fee." *Id.* The Annual Update of the Poverty Guidelines promulgated by the Department of

Health and Human Services recently set the poverty guidelines for a one-person household in the 48 contiguous States at an annual income of $15,650.00.[2] Looking at Polinski's financial resources, he has not established that paying the filing fee would present a choice "between abandoning a potentially meritorious claim or forgoing the necessities of life." *Rosa v. Doe*, 86 F.4th 1001, 1010 (2d Cir. 2023) (cleaned up). In other words, Polinski's *IFP* application "fails to establish the level of poverty required under the *IFP* statute[.]" *Thomas v. Bisignano*, No. 25-CV-6541, 2025 WL 3707832, at *1 (E.D.N.Y. Dec. 22, 2025) (slip op.). And because Polinski has not established that he falls below the poverty level under the *IFP* statute, his application is properly denied. *Id.*

Accordingly, the Court recommends that Polinski's motion to proceed *IFP* be denied, and that he be directed to pay the $405.00 filing fee if he wishes to proceed with this action. If the District Court disagrees with this recommendation, the Court proceeds to analyze the Complaint under 28 U.S.C. § 1915.

---

[2] *See* https://www.federalregister.gov/documents/2025/01/17/2025-01377/annual-update-of-the-hhs-poverty-guidelines (last visited on July 15, 2026).

## II. COMPLAINT

The Court assumes Polinski's familiarity with the facts of this case which the Court will incorporate in its analysis of his claim where necessary.

## III. STANDARD OF REVIEW

In addition to determining whether a plaintiff meets the financial criteria to proceed *IFP*, courts must consider the sufficiency of the allegations set forth in the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. Section 1915(e)(2) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *IFP*, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or

fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c).

Second Circuit jurisprudence suggests that 28 U.S.C. § 1915(e)(2)(B)'s review of *pro se* complaints is a two-step inquiry.

At step one, courts apply the traditional special solicitude afforded to *pro se* plaintiffs. *See, e.g.*, *Rosa*, 86 F.4th at 1007-08. Indeed, courts are "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). "The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal construction of pleadings" and "motion papers." *Id.* (cleaned up). So, at step one, courts must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *White v. Schmidt*, No. 22-1267, 2024 WL 1266245, at *2 (2d Cir. Mar. 26, 2024) (summary order) (quoting *Harnage v. Lightner*, 916 F.3d 138, 140-41 (2d Cir. 2019)). And once the court has done so, it must then construe the *pro se* submission "to raise the strongest arguments that [it] suggest[s]."

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (cleaned up).

At step two, courts subject the liberally construed pleading to Rule 8's pleading standard. *See, e.g.*, *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (*per curiam*) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2005) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when affirming a district court's dismissal of the plaintiff's complaint under 28 U.S.C. § 1915); *see also Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (summary order) (citing *Sykes* and affirming the District Court's *sua sponte* dismissal of a prisoner rights case); *Hirsch v. Rochester City Police Dep't*, 578 F. App'x 49, 50 (2d Cir. 2014) (summary order) (same in a civil rights case); *Sheehy v. Brown*, 335 F. App'x 102, 103-04 (2d Cir. 2009) (summary order) (citing *Iqbal* and affirming the District Court's dismissal of a claim under 20 U.S.C. § 1915(e)(2)).

While the Second Circuit has never formally stated that Rule 8's pleading standard applies, the Court infers that the Second Circuit has adopted that position. To arrive at this conclusion, the Court focuses on two pieces of evidence. First, the Circuit has cited *Iqbal* and *Twombly*—which clarified Rule 8s pleading standard. *See Sykes*, 723 F.3d at 403.

Second, the other circuit courts have authorized district courts to apply the Rule 12(b)(6) standard when reviewing claims under § 1915(e)(2)(B). *See Herrera v. Agents of Pennsylvania Bd. of Prob. & Parole*, 132 F.4th 248, 254 n.5 (3d Cir. 2025) (applying Rule 12(b)(6)'s standard to § 1915(e)(2)(B) review); *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (same); *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (*per curiam*) (same); *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (same); *Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461, 468 (7th Cir. 2017) (same); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same); *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007) (same); *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (same). Nothing in the Second Circuit's jurisprudence leads this Court to believe that it would break stride with eight other circuit courts. This evidence, altogether, leads this Court to believe that the Second Circuit approves of this Court's application of Rule 12(b)(6)'s standard to § 1915(e)(2)(B) reviews *after* applying special solicitude to the *pro se* submission.

When applying Rule 8 to pleadings, the Court's must determine if a claim is facially plausible. *See Iqbal*, 556 U.S. at 678 (2009) (citing

*Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This means that *pro se* complaints, even while liberally construed, "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Sykes*, 723 F.3d at 403 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

In sum, the Court's role, when reviewing a Complaint under § 1915(e)(2)(B), is two-fold. First, the Court must draw all inferences in the *pro se* plaintiff's favor and construe their submission to raise the strongest possible argument. Second, the Court must then review the Complaint and determine if it plausibly alleges enough facts for the Court to reasonably infer that the defendant would be liable for the alleged misconduct.

## IV. <u>DISCUSSION</u>

The Court recommends dismissal of the Complaint *with prejudice and without leave to amend* because Polinski's claims are barred by *res judicata* and collateral estoppel.

### A. Res Judicata

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (*per curiam*). "In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 224 (E.D.N.Y. 2010) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)). "Rather,

the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Umar Oriental Rugs, Inc.*, 757 F. Supp. 2d at 224 (quoting *Maharaj*, 128 F.3d at 97).

**B. Collateral Estoppel**

"Collateral estoppel . . . means simply that when an issue of ultimate fact has . . . been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *White v. Prof'l Claims Bureau, Inc.*, 284 F. Supp. 3d 351, 358 (E.D.N.Y 2018) (quoting *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)) (cleaned up). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or [its] privy and of promoting judicial economy by preventing needless litigation." *Prof'l Claims Bureau, Inc.*, 284 F. Supp. 3d at 358 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from

relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007).

**C. Analysis**

The Complaint expressly alleges that the claims advanced by Polinski in this action arise out of the same facts as the claims previously asserted by him in an action pending in the Northern District of Texas bearing case number 3:24-CV-03267-X-BT. (Dkt. 1, Compl., ¶ 41). On December 15, 2025, Magistrate Judge Rebecca Rutherford recommended that: (1) Polinski's complaint be dismissed with prejudice for failure to state a claim under 28 U.S.C. § 915(e)(2)(B); and (2) Polinski be found to be a vexatious litigant, and that the clerk of the court be directed not to accept any further actions from him unless Polinski first obtains leave from a district or magistrate judge. *See Polinski v. Avondale Premier Collection*, No. 24-CV-3267-X-BT, 2025 WL 3902068, at *6 (N.D. Tex. Dec. 15, 2025) (slip op.). On January 7, 2026, U.S. District Court Judge Brantley Starr accepted Magistrate Judge Rebecca Rutherford's Findings, Conclusions, and Recommendation. *See Polinski v. Avondale Premier Collection*,

No. 24-CV-3267-X-BT, 2026 WL 51092, at *1 (N.D. Tex. Jan. 7, 2026) (slip op.). In response, Polinski filed a motion under Fed. R. Civ. P. 60(b)(6) which was denied. (Dkt. 1, Compl., ¶ 45). Polinski then appealed the dismissal of his case in the Northern District of Texas to the Fifth Circuit, Case Number 26-10074. (*Id.*, ¶ 46).

Notably, Polinski alleges that he filed an action in the Northern District of New York "to preserve [his] claims and ensure proper adjudication under the correct legal standards." (Dkt. 1, Compl., ¶ 47). Polinski acknowledges that he commenced this action for the singular reason that he was unhappy with the outcome of his litigation against Defendant in the Northern District of Texas. Polinski made a conscious decision to litigate his claims against Defendant in the Northern District of Texas. His case was dismissed in that forum and he filed an appeal with the Fifth Circuit Court of Appeals. (Dkt. 1, Compl., ¶ 46). Regardless of whether this case is analyzed under the doctrine of *res judicata* or collateral estoppel, the result is the same. Polinski should be barred from relitigating a case that has already been decided on the merits. The Court therefore recommends that the Complaint be dismissed *with prejudice and without leave to amend*.

## V. OPPORTUNITY TO AMEND

Generally, before the court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Granting Polinski leave to amend his Complaint would be futile. There are no additional allegations that Polinski could plead that would change the fact that this litigation is duplicative of the action he commenced in the Northern District of Texas. The Court therefore recommends that Polinski not be granted leave to amend.

## VI. CONCLUSION

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED**, that Polinski's motion to proceed *in forma pauperis* (Dkt. 2) be **DENIED**, and it is further

**RECOMMENDED** that Polinski's Complaint (Dkt. 1)

be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**, and it is further

**ORDERED** that the Clerk provide Polinski with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 28, 2026.

Digitally signed by Mitchell J Katz
Date: 2026.07.28 08:17:35 -04'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

[3] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

KeyCite Yellow Flag
Remanded by Mulqueen v. Herkimer County, N.D.N.Y., June 13, 2023

2023 WL 184514
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Wendy S. MULQUEEN and
Brian G. Mulqueen, Plaintiffs,
v.
HERKIMER COUNTY, et al., Defendants.

6:22-CV-1301 (TJM/ATB)
|
Signed January 13, 2023

**Attorneys and Law Firms**

WENDY S. MULQUEEN, Plaintiff, pro se.

BRIAN G. MULQUEEN, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

***1** The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by husband-and-wife plaintiffs Brian and Wendy Mulqueen. (Dkt. No. 1) ("Compl."). Plaintiffs have also moved to proceed in forma pauperis ("IFP") (Dkt. Nos. 2, 3), and for appointment of counsel. (Dkt. Nos. 4, 5).

## I. In Forma Pauperis ("IFP") Applications

### A. Legal Standards

In order to proceed IFP in federal court, the court must be satisfied by plaintiffs' affidavits that they are unable to pay the "cost of these proceedings." (Dkt. Nos. 2 at 1; 3 at 1); 28 U.S.C. § 1915. " 'The purpose of 28 U.S.C. 1915 is to ensure that litigants will not be deprived of access to the judicial system because of their financial circumstances.' " *Deep v. Boies*, No. 1:09-MC-73, 2010 WL 11526763, at *1 (N.D.N.Y. Mar. 19, 2010) (quoting *Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984)) (citing *Harlem River Consumers Co-op, Inc. v. Associated Grocers of Harlem, Inc.*, 71 F.R.D. 93, 96 (S.D.N.Y. 1976)). Whether to grant an application to proceed IFP rests within the sound discretion of the court. *Id.* (citing *Monti*, 600 F. Supp. at 113). " 'There is surprisingly sparse number of cases which apply the general indigency standards to particular fact situations.' " *Id.* (quoting *In re Koren*, 176 B.R. 740, 744 (E. D. Pa. 1995)).

Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility. The statute provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate " 'that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.' " *Tucker v. United States*, 142 Fed. Cl. 697, 707 (2019) (quoting *Fiebelkorn*, 77 Fed. Cl. 59, 62 (2007)); *Deep*, 2010 WL 11526763, at *1 (quoting *Fiebelkorn*, 77 Fed. Cl. at 62) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). When considering a motion filed pursuant to § 1915(a), " '[t]he only determination to be made by the court ... is whether the statements in the affidavit satisfy the requirement of poverty.' " *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (quoting *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976)) (alteration in original). "Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* As the Second Circuit has noted, "[n]o party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick v. Eastern State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983)(citing *Adkins,* 335 U.S. at 339).

### B. Application

In this case, plaintiff Brian Mulqueen states in his application that he is currently employed, that his yearly gross pay is approximately $74,000, and that he receives $878.42 in net pay weekly. (Dkt. No. 3 at 1). Mr. Mulqueen's wife, Wendy Mulqueen, indicates that she is not employed, but appears to receive $650.00 a month in "rent payments, interest, or dividends." (Dkt. No. 2 at 1). The plaintiffs have not identified any debts or financial obligations, and state that they make monthly payments toward their mortgage, car, utilities and food. (Dkt. Nos. 2 at 2; 3 at 2). They further represent that they contribute "full support" to their six children [1] and a 45 year-old "sister." (*Id.*). The plaintiffs state that they have "$0" in cash or in a checking or savings account. (*Id.*).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

1 The children's ages are as follows: 4, 7, 11, 13, 18, and 23. (Dkt. Nos. 2 at 2; 3 at 2).

***2** Based upon the information provided in the plaintiffs' motions, this court is not convinced that plaintiffs are "unable" to pay the filing fee, or that paying a filing fee would pose a "serious hardship" on the plaintiffs. Federal courts often look to federal poverty guidelines to determine whether a plaintiff would be subject to serious hardship if compelled to pay a filing fee. *See, e.g., Andrews v. U.S. Bank Nat'l Ass'n,* No. 3:22-CV-00456, 2022 WL 2287689, at *1 (D. Conn. Apr. 8, 2022) (looking to federal poverty guidelines to determine IFP status); *Fuentes v. United States*, 100 Fed. Cl. 85, 92 (2011) (same). Here, Mr. Mulqueen's gross income of over $70,000 alone places the plaintiffs above the federal poverty guidelines for even their purported nine person household.[2] The Annual Update of the Poverty Guidelines promulgated by the Department of Health and Human Services most recently set the poverty guidelines for a family of nine in the 48 contiguous States at $51,350.[3] Accordingly, the plaintiffs have not established on this record that paying the filing fee would present them with a choice "between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244. The court thus recommends that the district court dismiss plaintiffs' complaint without prejudice if they do not submit the filing fee within thirty (30) days of the filing date of this Report-Recommendation and Order.[4]

2 "In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse.' " *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) (quoting *Williams v. Spencer*, 455 F. Supp. 205, 208-09 (D. Md. 1978)).

3 *See* https://www.federalregister.gov/documents/2022/01/21/2022-01166/annual-update-of-the-hhs-poverty-guidelines.

4 A decision to deny IFP status is typically regarded as dispositive. *Abreu v. Lira*, No. 9:12-CV-1385(NAM/DEP), 2014 WL 4966911, at *2 n.1 (N.D.N.Y. Sept. 30, 2014) (citing *Kiobel v. Millson*, 592 F.3d 78, 92 (2d Cir. 2010)). Accordingly, the court has recommended to the District Court denial of plaintiff's application for IFC status.

## II. Appointment of Counsel

### A. Legal Standards

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d at 172-73.

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

### B. Analysis

As previously set forth, plaintiffs have not established that they qualify for IFP status based on the record presently

before this court. For those same reasons, the court is not convinced that plaintiffs have established entitlement to the appointment of counsel on the basis of indigency, pursuant to 28 U.S.C. § 1915(e)(1).

***3** Moreover, this action was only recently commenced, and the only facts upon which this court may base its decision as to whether this lawsuit is of substance are the facts stated in plaintiffs' complaint. Even if the court had granted plaintiffs' IFP status and allowed this case to go forward, where there are merely unsupported allegations, the moving party does not meet the first requirement imposed by the Second Circuit for appointment of pro bono counsel. *See Harmon v. Runyon*, No. 96 Civ. 6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997); *see also Creach v. Doe*, No. 1:20-CV-199 (DNH/CFH), 2020 WL 4721434, at *8 (N.D.N.Y. June 16, 2020), *report and recommendation adopted*, 2020 WL 4698507 (N.D.N.Y. Aug. 12, 2020) ("Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to his claims against the defendants, he does not meet the first requirement imposed by the Second Circuit relative to application seeking appointment of counsel."). Thus, the court will deny appointment of counsel at this time, without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' motions to proceed IFP (Dkt. Nos. 2, 3) be **DENIED,** and that the district court dismiss the plaintiffs' complaint without prejudice if they do not submit the filing fee within thirty (30) days of this Report-Recommendation and Order, and it is

**ORDERED**, that plaintiffs' motions for appointment of counsel (Dkt. Nos. 4, 5) are **DENIED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 184514

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 6:22-CV-01301**<br>Mulqueen et al v. Herkimer County et al | — | N.D.N.Y. | Dec. 05, 2022 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (5)**

**Direct History (2)**

1. Mulqueen v. Herkimer County
2023 WL 184514 , N.D.N.Y. , Jan. 13, 2023

*Remanded by*

2. Mulqueen v. Herkimer County
2023 WL 3981437 , N.D.N.Y. , June 13, 2023

**Related References (3)**

3. Mulqueen v. Herkimer County Child Protective Services
2023 WL 4931679 , N.D.N.Y. , Aug. 02, 2023

*Report and Recommendation Adopted by*

4. Mulqueen v. Herkimer County Child Protective Services
2024 WL 756833 , N.D.N.Y. , Feb. 23, 2024

5. Mulqueen v. Coddington
2025 WL 2096986 , N.D.N.Y. , July 25, 2025

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3707832
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Samuel THOMAS, Plaintiff,
v.
Frank BISIGNANO, Commissioner of Social Security, Defendant.

2:25-cv-6541 (NJC)
|
Signed December 22, 2025

**Attorneys and Law Firms**

Eddy PierrePierre, Pierre Pierre Law, P.C., Bronxville, NY, for Plaintiff.

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

***1** Presently before the Court is an application to proceed in forma pauperis ("IFP") filed by counsel on behalf of plaintiff Samuel Thomas together with a Complaint seeking review pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), of a decision of the Commissioner of Social Security. (*See* Compl., ECF No. 1; IFP App., ECF No. 2.) For the reasons that follow, the application to proceed IFP is denied without prejudice and with leave to renew upon filing the enclosed "Application to Proceed in District Court without Prepaying Fees or Costs (Long Form)" (AO 239) ("Long Form"). Alternatively, Thomas may pay the $405.00 filing fee within fourteen (14) days in order for this case to proceed.

To qualify for IFP status, the Supreme Court has long held that "an affidavit is sufficient which states that one cannot because of his poverty pay or give security for the costs [inherent in litigation] and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. Du Pont De Nemours & Co.*, 335 U.S. 331, 339 (1948) (quotation marks and alterations omitted). "The federal *in forma pauperis* statute represents a significant effort to ensure the ability of impoverished litigants to prosecute meritorious claims or defenses without disadvantage." *Rosa v. Doe*, 86 F.4th 1001, 1004 (2d Cir. 2023). Indeed, "[t]he purpose of the statute permitting litigants to proceed IFP is to insure that indigent persons have equal access to the judicial system." *Velasquez v. Comm'r of Soc. Sec.*, No. 24-cv-2035, 2024 WL 3202974, at *2 (E.D.N.Y. June 26, 2024). Determining whether an applicant qualifies for IFP status is within the discretion of the district court. *See Rosa*, 86 F.4th at 1007 (explaining IFP application denials are reviewed for abuse of discretion). When a litigant's application fails to establish the level of poverty required under the IFP statute, such application is properly denied. *See, e.g.*, *Miller v. Smith*, No. 21-cv-2949, 2021 WL 2894973, at *2 (E.D.N.Y. June 2, 2021) (denying IFP motion where the plaintiff did not disclose the balance in her checking account). The court may dismiss a case brought by a plaintiff requesting to proceed IFP if the "allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A).

Here, Thomas's application does not provide sufficient information for the Court to reasonably conclude that he is unable to afford the filing fee. For example, Thomas has responded with "0" or "NONE" to almost every question on the application. (*See* ECF No. 2.) Thomas explains that he "currently reside[s] with my mother and she covers all household expenses." (*Id.* at ¶ 6.) Indeed, Thomas has omitted any expenses for housing and other regular living expenses including utilities and transportation. (*Id. in toto.*) Thus, the present application raises more questions than it answers and does not demonstrate that Thomas is qualified to proceed IFP.

Accordingly, the IFP motion is denied without prejudice and with leave to renew on the enclosed Long Form IFP application. "In assessing an application to proceed *in forma pauperis*, a court may consider the resources that the applicant has or can get from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent, adult sibling or other next friend." *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) (cleaned up). Further, "a court properly exercises its discretion to deny the [IFP] application" where it appears that the applicant's "access to [ ] court has not been blocked by his financial condition; rather [that] he is merely in the position of having to weigh the financial constraints posed if he pursues [his position] against the merits of his case." *Brooks v. Aiden 0821 Capital LLC*, No. 19-cv-6823, 2020 WL 4614323, at *5 (E.D.N.Y. July 22, 2020) (quoting *Fridman*, 195 F. Supp. 2d at 537) (internal quotation marks omitted). Accordingly, Thomas shall include the financial information for his mother and any other person or persons who support him financially in the spaces marked "spouse" on the renewed application. Alternatively, Thomas may pay the $405.00 filing fee. Thomas shall either file the renewed IFP application or remit the filing fee within two

(2) weeks of the date of this Order or the Complaint will be dismissed without prejudice.

***2** The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. *See* *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**All Citations**

Slip Copy, 2025 WL 3707832

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings**

There are no Filings for this citation.

**History**

There are no History results for this citation.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1266245
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Paul WHITE, Plaintiff-Appellant,
v.
Sandra SCHMIDT, aka Sandra Kroger Schmidt,
aka Sandra K. Schmidt, Defendant-Appellee,
Pat Doe, (1–10), Defendants.
Paul White, Plaintiff-Appellant,
v.
Teodocia Santos, Ella Abney, Personally
and as Executrix of the Estate of Albert
Abney, Pat Doe, Defendants-Appellees. *

* The Clerk of Court is directed to consolidate these appeals for purposes of decision.

22-1267, 22-1911
|
March 26, 2024

Appeals from judgments of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Paul White, pro se, Coxsackie, NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: ROBERT D. SACK, WILLIAM J. NARDINI, MYRNA PÉREZ, Circuit Judges.

**SUMMARY ORDER**

***1**

* * *

Plaintiff-Appellant Paul White, *pro se* and incarcerated, appeals from the April 26, 2022, and August 1, 2022, *sua sponte* dismissals of two federal lawsuits (Mae A. D'Agostino, *District Judge*), each pursuant to the *Rooker-Feldman* doctrine. White's appeals have been considered in tandem and consolidated for disposition. In 2015, White was convicted in New York state court of grand larceny and fraud, stemming from a scheme to defraud investors in a North Carolina real estate development. *See* *Spota v. White*, No. 29681-12, 2016 WL 6427362, at *2, 4 (N.Y. Sup. Ct. Suffolk Cnty. Oct. 28, 2016) (explaining the background of the criminal case in a decision on a civil forfeiture proceeding). The Supreme Court, Suffolk County, awarded $2.975 million in restitution to his victims, who included Sandra Schmidt, Teodocia Santos, and Ella and Albert Abney (the "Abneys"). *Id.* at *2. White's appeal of the criminal judgment is, as of the time of writing, still pending.

In 2014, the Suffolk County District Attorney's Office brought a civil forfeiture action against White and obtained a $2.4 million judgment. *Id.* at *4, 9. After the judgment was entered, White retained an attorney who obtained a decision in a North Carolina court, which he claims held that the investors had received their bargained-for-benefit, consisting of the validly deeded ownership of the property.

In 2017, White sued Schmidt and the Abneys in the Eastern District of New York, claiming that they had provided false statements to the Suffolk County District Attorney's Office and had testified falsely at grand jury proceedings and at his criminal trial, which resulted in their unjust enrichment by virtue of the restitution judgment that had been entered in their favor. In two different orders, the Eastern District dismissed the action, reasoning that the defendants were entitled to witness immunity, and in the alternative, the court lacked subject matter jurisdiction to entertain the unjust enrichment claim under *Rooker-Feldman. See generally* *White v. Abney*, No. 17-cv-4286, 2020 WL 5848647 (E.D.N.Y. Sept. 30, 2020); *White v. Abney*, No. 17-cv-4286, 2021 WL 1176218 (E.D.N.Y. Mar. 29, 2021).

In 2021, White filed the actions underlying these appeals. He sued Schmidt in the Northern District of New York, claiming that the restitution judgment had been satisfied by the North Carolina decision and that she had been unjustly enriched by a sum that he had separately paid to her. In a separate action, he sued Santos and the Abneys, raising substantially identical claims.

In 2022, the district court *sua sponte* dismissed each action as barred under the *Rooker-Feldman* doctrine and,

alternatively, by collateral estoppel or *res judicata*, based on the preclusive effect of the Eastern District's earlier *Rooker-Feldman* procedural holding. *See generally White v. Schmidt*, No. 21-cv-854, 2022 WL 1222805 (N.D.N.Y. Apr. 26, 2022); *White v. Santos*, No. 21-cv-417, 2022 WL 3025723 (N.D.N.Y. Aug. 1, 2022). White timely appealed. We assume the parties' familiarity with the case.

***2** We review *de novo* a *sua sponte* dismissal of a complaint, including a dismissal based on collateral estoppel, *res judicata*, or lack of subject matter jurisdiction under *Rooker-Feldman*. *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*sua sponte* dismissal); *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 368 (2d Cir. 1997) (collateral estoppel and *res judicata*); *Edwards v. McMillen Cap., LLC*, 952 F.3d 32, 35 (2d Cir. 2020) (*Rooker-Feldman*). When reviewing a *sua sponte* dismissal, we "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Harnage v. Lightner*, 916 F.3d 138, 140–41 (2d Cir. 2019). [1]

1 Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

Recognizing the "special solicitude" this Court must afford *pro se* litigants, *see Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023), we nevertheless conclude that White's claims against Schmidt and the Abneys are barred by *res judicata*, or claim preclusion. "[C]laim preclusion ... operates in two ways: (1) it bars claims that were brought and decided in a prior litigation; and (2) it bars all other claims relating to the same transaction against the same defendant that could have been brought at that time." *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87 (2d Cir. 2000). *White v. Abney* involved claims by White against Schmidt and the Abneys, so claim preclusion bars him from now raising any claims "relating to the same transaction ... that could have been brought" at the time he filed suit in *White v. Abney*. *Id.* White alleges that the following had occurred before he filed his complaint in *White v. Abney*: (1) the Suffolk County Court entered restitution judgments in favor of Santos, the Abneys, and Schmidt against White, (2) White obtained a decision from the North Carolina Superior Court determining that the defendants in these cases held valid deeds for the properties at issue, and (3) White paid approximately $31,000 each to Schmidt and the Abneys in partial satisfaction of the restitution judgments.

In the present cases, White seeks a declaratory judgment that the Suffolk County Court restitution judgments against him were satisfied by the North Carolina decision, and a return of the money he has paid to the defendants based on a theory of unjust enrichment distinct from the theory of unjust enrichment White relied on in *White v. Abney*. However, because White allegedly paid the defendants a partial restitution before the North Carolina decision was issued, and the North Carolina decision was issued before White initiated *White v. Abney*, White could have included his current claims for declaratory relief and unjust enrichment against Schmidt and the Abneys in *White v. Abney*. Accordingly, White's claims against Schmidt and the Abneys are barred by *res judicata.*

Santos, however, was not included as a defendant in *White v. Abney*, so claim preclusion cannot apply to White's current claims against Santos. *See N. Assurance*, 201 F.3d at 87. We therefore consider whether White's claims against Santos are barred under the *Rooker-Feldman* doctrine or collateral estoppel, as the district court found. We determine that they are not. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). For a federal court to abstain under *Rooker-Feldman*,

> ***3** (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021). Here, the relevant state-court judgment is the criminal restitution judgment, which White alleges has been satisfied, not the civil forfeiture judgment. The civil forfeiture court did not address White's challenge to the restitution order, explaining instead that White's challenge was an improper collateral attack on the criminal conviction, which had to be raised instead on direct criminal appeal. *See Spota*, 2016 WL 6427362, at *4. Thus, if White is

complaining of an injury from a state-court judgment, the relevant judgment is the criminal restitution judgment.

The application of *Rooker-Feldman* here was improper because the criminal restitution judgment was not final at the time the federal lawsuit commenced. In *Hunter v. McMahon*, 75 F.4th 62, 65, 67, 70–71 (2d Cir. 2023), this Court concluded that the *Rooker-Feldman* doctrine could not apply when an appeal remains pending in state court at the time a complaint is filed, because *Rooker-Feldman* applies only after state-court proceedings have "ended." Because White's criminal appeal remains pending, the relevant state court proceeding had not concluded before White filed his complaint. Accordingly, the district court erred by dismissing the complaint based on *Rooker-Feldman.*

Although the district court alternatively dismissed the complaint on the basis of collateral estoppel, we do not affirm on this ground. In *White v. Abney*, the Eastern District dismissed White's complaint against Schmidt under the *Rooker-Feldman* doctrine. *Abney*, 2020 WL 5848647, at *7. While collateral estoppel can bar reconsideration even of erroneous prior rulings, our decision in *Hunter* amounted to a significant clarification of our law on this fairly significant issue of *Rooker-Feldman*'s proper scope. *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) ("[E]ven where the specified elements of collateral estoppel are present, reexamination of a legal issue is appropriate where there has been a change in the legal landscape after the decision claimed to have preclusive effect."). Accordingly, we do not affirm the judgment based on the preclusive effect that the *Rooker-Feldman* holding in *White v. Abney* might have.

* * *

In sum, the district court erred by relying on the *Rooker-Feldman* doctrine to *sua sponte* dismiss White's complaints. We decline to affirm on the alternative grounds of collateral estoppel. However, the district court's judgments with respect to Schmidt and the Abneys can be affirmed on the alternative ground of *res judicata.* We express no view on the merits (or lack thereof) of the underlying suit against Santos, which is better addressed by the district court in the first instance.[2] Therefore, the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED** for further proceedings.

2 We acknowledge that the district court may decide that a stay is warranted pending the outcome of the criminal restitution judgment appeal. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay ... the federal action in favor of the state-court litigation.").

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 1266245

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (10)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Appellant's Brief** Paul WHITE, Appellant-Plaintiff, v. Teodicia SANTOS and Ella Abney, Personally, and Ella Abney as Executrix of the Estate of Albert Abney, Respondents-Defendants. 2022 WL 10084079 | | C.A.2 | Sep. 28, 2022 | Brief |
| **2. Appellant's Brief** Paul WHITE, Appellant-Plaintiff, v. Teodicia SANTOS and Ella Abney, Personally, and Ella Abney as Executrix of the Estate of Albert Abney, Respondents-Defendants. 2022 WL 1468427 | | C.A.2 | Apr. 18, 2022 | Brief |
| **3. Appellant's Brief** Paul WHITE, Appellant-Plaintiff, v. Sandra SCHMIDT, Respondent-Defendant. 2022 WL 1468431 | | C.A.2 | Mar. 18, 2022 | Brief |
| **4. Appellant's Brief** Paul WHITE, Appellant-Plaintiff, v. Sandra SCHMIDT, Respondent-Defendant. 2022 WL 1468434 | | C.A.2 | Mar. 18, 2022 | Brief |
| **5. Docket 22-1911** White v. Santos | — | C.A.2 | Sep. 01, 2022 | Docket |
| **6. Docket 22-1267** White v. Schmidt | — | C.A.2 | June 06, 2022 | Docket |
| **7. Docket 22-89** White v. Santos | — | C.A.2 | Jan. 14, 2022 | Docket |
| **8. Docket 22-92** White v. Schmidt | — | C.A.2 | Jan. 14, 2022 | Docket |
| **9. Docket 1:21-CV-00854** White v. Schmidt et al | — | N.D.N.Y. | July 29, 2021 | Docket |
| **10. Docket 1:21-CV-00417** White v. Santos et al | — | N.D.N.Y. | Apr. 13, 2021 | Docket |

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (12)**

**Direct History (12)**

1. White v. Schmidt
2021 WL 3856741 , N.D.N.Y. , Aug. 30, 2021

*Appeal Dismissed by*

2. White v. Schmidt
2022 WL 17406134 , 2nd Cir. , Apr. 21, 2022

*AND Report and Recommendation Adopted by*

3. White v. Schmidt
2022 WL 1222805 , N.D.N.Y. , Apr. 26, 2022

*Affirmed in Part, Vacated in Part, Remanded by*

4. White v. Schmidt
2024 WL 1266245 , 2nd Cir.(N.Y.) , Mar. 26, 2024

*On Remand to*

5. White v. Santos
2025 WL 1610573 , N.D.N.Y. , Mar. 10, 2025

*Report and Recommendation Adopted by*

6. White v. Santos
2025 WL 1275846 , N.D.N.Y. , May 02, 2025 , appeal dismissed (2d Cir. 25-1462) ( Nov 25, 2025 )

7. White v. Santos
2021 WL 6339606 , N.D.N.Y. , Oct. 18, 2021

*Appeal Dismissed by*

8. White v. Santos
2022 WL 18282866 , 2nd Cir. , Apr. 21, 2022


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

*AND Report and Recommendation Adopted by*

9. White v. Santos
2022 WL 3025723 , N.D.N.Y. , Aug. 01, 2022

*Affirmed in Part, Vacated in Part, Remanded by*

10. White v. Schmidt
2024 WL 1266245 , 2nd Cir.(N.Y.) , Mar. 26, 2024

*On Remand to*

11. White v. Santos
2025 WL 1610573 , N.D.N.Y. , Mar. 10, 2025

*Report and Recommendation Adopted by*

12. White v. Santos
2025 WL 1275846 , N.D.N.Y. , May 02, 2025 , appeal dismissed (2d Cir. 25-1462) ( Nov 25, 2025 )


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4398956
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Noella ASHWORTH and Dawn Sears, Plaintiffs,
v.
Judith BOGGIO, et al., Defendants.

CV 15-948 (JFB)(ARL)
|
Signed 07/26/2016

**Attorneys and Law Firms**

Noella Ashworth, Bellmore, NY, pro se.

Dawn Sears, Bellmore, NY, pro se.

Stephen E. Zaino, Bonchonsky & Zaino, LLP, Garden City, NY, Allison J. Schoenthal, Jessica Michelle Prunell, Hogan Lovells US LLP, New York, NY, Edward Rugino, Rosicki, Rosicki & Associates, P.C., Plainview, NY, Allan L. Pullin, Weber & Pullin, L.L.P., Woodbury, NY, for Defendants.

## REPORT AND RECOMMENDATION

LINDSAY, Magistrate Judge

***1** Before the Court, on referral from District Judge Bianco, are the motions of the defendants, JPMorgan Chase Bank, N.A., Federal National Mortgage Association, Seterus, Inc., Rosicki, Rosicki & Associates, P.C. and Michael Ashley to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (6). For the reasons that follow, the undersigned respectfully recommends that each of the motions be granted.

## BACKGROUND

The following facts are drawn from the Amended Complaint, together with "documents incorporated in it by reference" and "document[s] upon which the [amended] complaint heavily relies." *In re Thelen LLP,* 736 F.3d 213, 219 (2d Cir. 2013). These facts are taken as true for purposes of deciding the instant motion.

This case stems for a foreclosure action commenced by Federal National Mortgage Association ("Fannie Mae") in 2011 against the plaintiff, Noella Ashworth ("Ashworth"). Hughes Decl., Ex. 2. Ashworth and her daughter, Dawn Sears ("Sears") [1] , are residents of Nassau County, who reside at 2995 Merrick Road, Bellmore, New York 11710 (the "premises"). Bonchonsky Decl., Ex. C; Am. Compl., p. 12. On December 31, 2007, Ashworth obtained a loan for $340,000 from JPMorgan Chase Bank, N.A. ("JPMorgan") through non-party mortgage broker Lend America. Hughes Decl., Ex. 1; Ashley Decl., ¶3. In connection with the loan, Ashworth executed a note wherein she agreed to repay the loan amount with interest at a rate of 9.125 percent per annum, in equal monthly installments of $2,766.35 from March 1, 2008 to February 1, 2038 (the "Note"). Hughes Decl., Ex. 2. The loan was also secured by a mortgage on the premises, which was recorded on January 23, 2008 (the "Mortgage"). *Id.,* Ex.l. Thereafter, the Mortgage and Note were reassigned to Mortgage Electronic Registration Systems Inc., as nominee for Fannie Mae. *Id.,* Ex. 2.

1 Sears was not a party to the mortgage loan and the defendants question her standing to assert claims in this case. For the purposes of this motion, the court has considered her allegations. Sears was an occupant of the premises, was served with the summons and complaint in the foreclosure action and was permitted to appear on her mother's behalf in the state court. It also appears that Sears was a former employee of Lend America. Ashley Decl., ¶ 3.

The defendant Seterus, Inc. ("Seterus") is a national loan servicing company that serviced Ashworth's mortgage loan (together with Fannie Mae, the "Fannie Mae defendants"). Fannie Mae Mem. at 3. The defendant Rosicki, Rosicki & Associates, P.C. is a law firm that represented Fannie Mae in the foreclosure proceeding. The defendants Judith Boggio and Michael Ashley are individuals who were employed by Lend America. *See* Am. Compl., ¶¶ 20, 23, 24.

According to the defendants, on February 1, 2009, Ashworth defaulted on the loan. Hughes Decl., Ex. 2. By October 2011, the amount of the debt was $458,298.59 consisting of principal balance of $337,932.30, plus interest of $86,341.70, escrow shortages or credits of $31,345.08, inspection and miscellaneous charges of $1,404.51, attorneys' fees of $1,000 and title search fees of $275. On October 21, 2011, Fannie Mae commenced a foreclosure action in the Nassau County

Supreme Court against Ashworth and any possible tenants or occupants of the premises. *Id.* According to Lijue Philip, an associate with Rosicki, despite being served with the summons, complaint and requisite notice, neither Ashworth nor Sears answered the complaint. Bonchonsky Decl., Ex. C, ¶ 6. In February, Ashworth also failed to appear for a settlement conference in the state court. *Id.* Accordingly, a foreclosure inquest hearing was scheduled for September 5, 2014. *Id.* Both Ashworth and Sears appeared for the hearing, rejected an opportunity to discuss a loan modification, and insisted on submitting their evidence of "fraud and forgery." *Id.* Based on the evidence submitted at the hearing, Justice Adams issued a Judgment of Foreclosure and Sale in Fannie Mae's favor. Hughes Decl., Ex. 4. Two days later, the Judgment for Foreclosure and Sale was filed with the Nassau County Clerk's Office. *Id.*

***2** The plaintiffs did not appeal the Judgment of Foreclosure and Sale. Instead, on September 30, 2014, Ashworth and Sears filed an Order to Show Cause in the state court seeking, among other things, vacatur of the Judgment of Foreclosure and Sale and dismissal of the foreclosure action in its entirety. *Id.,* Ex. 5. The papers submitted in support of the motion raised many of the same factual allegations that are set forth in the complaint in this action, namely:

> Failure to "comply with ongoing Cease and Desist written notices, with requests for documentation and validation of loan documents. Forged documents discovered August 2013 warrant criminal investigation and prosecution. Obstruction of justice and concealment and or possession of forged instrument(s) has compounded damages to us. Cease and Desist complaints remain ignored unresolved from the start. All involved entities are non complaint to date.

*Id.* In support of their motion, the plaintiffs relied on "Criminal Statutes – 30.10(3), Criminal Procedure, 20.00-20.25, 170.00-170.75, Forgery, 175.00-175.45, False written statements, 187.00-187.25, Residential Mortgage Fraud Section 1001, Title 18 U.S.C., Fraud and False Statements, 352-c Gen. Business Law" and "Penal Code 40.10 (2b-m), 30.10 (3.C)." *Id.* [2] By order dated March 27, 2015, the state court denied the relief sought in the motion, noting that the movants had failed to establish a basis for vacating the default or setting aside the determination after inquest. *Id.,* Ex.6. The plaintiffs did not appeal the decision and the time to do so has expired. Hughes Decl. at ¶ 10.

2 In January 2015, the plaintiffs filed a second order to show cause, but the state court judge declined to sign the order. Bonchonsky Decl., Exs. F, G.

On February 20, 2015, the plaintiffs commenced this action, alleging that terms of Ashworth's mortgage loan were altered by Boggio after they had left the closing. Compl., p. 3. Dawn Sears, who appears to have drafted the original Complaint, [3] alleged, among other things, that Boggio's intent was to steal her mother's equity and loan proceeds and to destroy her credit. *Id.* Sears also alleged that her name was forged on the agreement and that her mother's name was copied and pasted onto a document. *Id.* The plaintiffs further alleged that the forged document was not present at the closing. *Id.* The plaintiffs sought more than $12 million in damages. *Id.,* p. 3-4.

3 At the State Court Inquest hearing, Sears advised the court that she is a "31-year litigator for all banks." Hughes Decl., Ex. 5, Inquest Transcript, 8:1-8:11. She also indicated that she has been "certified in the Federal Fair Debt Collection Practices Act since 1991." *Id.*

On July 1, 2015, counsel for the Fannie Mae defendants sought permission to file a motion to dismiss the complaint. Dkt. No. 16. By order dated July 6, 2015, the Court waived the requirement for a pre-motion conference and set a briefing schedule for the defendants' intended motion to dismiss the complaint. Shortly thereafter, Rosiski filed a similar pre-motion conference letter and was instructed to follow the same briefing schedule. However, on August 3, 2015, the plaintiffs filed a "Motion to Amend/Correct/Supplement" the complaint and to add additional parties. Dkt. No. 34. Since the time to amend the complaint as of right had not yet expired, the Court granted the motion on August 7, 2015, and extended the time in which the defendants could answer or otherwise respond to the Amended Complaint. Dkt. No. 35.

***3** On August 10, 2015, the plaintiffs filed an Amended Complaint, which added Ashley as a defendant. The Amended Complaint contains a new series of scattered factual allegations and refers to host of statutes and seemingly unrelated lawsuits. [4] Ostensibly, the plaintiffs now allege that Boggio and Ashley, who they believe were "barred from banking and mortgages," conspired with JPMorgan to falsify Ashworth's mortgage documents. Am. Compl., pp. 5-6. They further assert that the Fannie Mae defendants concealed the forged documents and that JPMorgan, the Fannie Mae defendants and Rosicki are "engaging in the execution of a

tainted judgment obtained on the basis of fraud." *Id.,* p. 3. The Amended Complaint refers to a number of statutes and claims, including:

1. 18 U.S.C. §§ 656, 1010, 1014, 1005,1341, 1343-45, 1348, 2011;

2. 15 U.S.C. § 1692;

3. Mail fraud; and

4. Fraud.

Am. Compl., pp 1-11.

4 For example, the plaintiffs repeatedly refer to *United States v. Ideal Mortgage Bankers d/b/a Lend America,* CV 09-4484, and *United States v. JP Morgan Chase,* CV 13-220. In the *Ideal Mortgage* matter, the United States sought to permanently enjoin Lend America from engaging in schemes to defraud the United States by originating government-insured mortgage loans to unqualified borrowers. Ashworth does not appear to be one of the borrowers listed in the complaint. A default judgment was entered on May 7, 2010, which, among other things, enjoined Lend America from submitting to HUD any FHA-insured mortgage loans. Ashley entered into a consent judgment in that matter in which he agreed to be enjoined from submitting to HUD any loans for FHA insurance coverage; however, he neither admitted to nor de nied liability. CV 13-220 is a case entitled *Singh v. USICE/DHS,* not *United States v. JP Morgan Chase.* The plaintiffs also appear to have dropped their claims under the UCC, TILA and RESPA.

In connection with these revised claims, the plaintiffs seek an unspecified amount of monetary damages for "continuing and ongoing violations," and an order vacating the Judgment of Foreclosure and Sale obtained by Fannie Mae in the state-court foreclosure proceeding, as well as preliminary and permanent injunctions against any further enforcement of the Judgment of Foreclosure and Sale issued, including any attempts to evict the plaintiffs from the premises. Am. Compl. at pp. 10-12. Between September 3 and September 27, each of the defendants filed motions seeking to dismiss the Amended Complaint with the exception of Boggio, who has not appeared in the action.

## DISCUSSION

### I. Standards of Review

#### A. Rule 12(b)(1)

The defendants each move to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). " 'When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, ... the Court must consider the Rule 12(b)(1) motion first' " *Craig x. Saxon Mortg. Servs., Inc.,* No. 13-CV-4526, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) (quoting *Bobrowsky v. Yonkers Courthouse,* 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008)(citations and internal quotation marks omitted), *aff'd,* 561 U.S. 247 (2010). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider relevant documents that are extrinsic to the complaint. *See id.*

#### B. Rule 12(b)(6)

***4** "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level." ' *See* *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd*, 446 Fed.Appx. 360 (2d Cir. 201 l)(citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir. 2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

Where, as here, the complaint was filed by a *pro se* litigant, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006). However, a *pro se* complaint must state a plausible claim for relief, *Walker v. Schult,* 717 F.3d 119, 125 (2d Cir. 2013), and mere conclusions of law unsupported by factual averments need not be accepted, *Klos v. Bligh,* No. 13-CV-5449, 2014 WL 3778993, at *5 (E.D.N.Y. July 31, 2014). Lastly, " '[i]t is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records' " *Craig,* 2015 WL 171234, at *1 n.3 (quoting *Reyes v. Fairfield Props.,* 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009)).

**II. Rooker-Feldman Doctrine**

JPMorgan, the Fannie Mae defendants and Rosicki all argue that the plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.[5] *See generally District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923). This doctrine recognizes that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 84 (2d Cir. 2005). "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state – court decisions." *Green v. Mattingly,* 585 F.3d 97, 101 (2d Cir. 2009). The Second Circuit identified four elements that must be met for the *Rooker-Feldman* doctrine to divest a court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite the district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock,* 422 F.3d at 85 (internal quotation marks and citation omitted). All four requirements are satisfied in this case.

5 Although the *Rooker-Feldman* doctrine was not raised by Ashley given his interpretation of the claims asserted against him, the Court believes the analysis applies to all of the defendants.

First, with respect to the procedural elements of *Rooker-Feldman,* the plaintiffs lost in the state court when the Judgment of Foreclosure and Sale was entered against Ashworth on September 22, 2014. Second, the plaintiffs' claims are directly related to the state court Judgment of Foreclosure and Sale and, more specifically, the state court's acceptance of the validity of the mortgage and loan documents that formed the basis of that Judgment. Although the plaintiffs attempt to bolster the claim with vague allegations of other injuries resulting from fraud, read as a whole, the plaintiffs' injuries all stem from the action taken by Fannie Mae in the Nassau County Supreme Court to enforce its rights after Ashworth defaulted on the mortgage loan.

***5** The substantive requirements of *Rooker-Feldman* are also met. As stated above, the essence of the plaintiffs' complaint appears to be that defendants relied upon a forged or fraudulent document when they obtained the September 22, 2014 Judgment of Foreclosure and Sale in the state court. The Amended Complaint further alleges that Judgment is tainted because it has now been discovered that the defendants have historically engaged in similar acts of fraud and falsification. Am. Compl., p. 5. The plaintiffs are, therefore, seeking to undo the 2014 state court Judgment of Foreclosure and Sale based upon an alleged pattern of fraudulent activity and to stop the defendants' from enforcing their rights resulting from that Judgment.[6] Despite the plaintiffs' attempt to recast their claims in terms of fraud and conspiracy, the plaintiffs' allegations are inextricably intertwined with the foreclosure proceeding. *See Swiatkowski,* 745 F. Supp. 2d at 165 (dismissing case under analogous circumstances); *Kropelnicki v. Siegel,* 290 F.3d 118 (2d Cir. 2002)( "a litigant may not rely on the deception of her opponents to demonstrate that she was not afforded a reasonable opportunity to raise her claims"); *Webster v. Wells Fargo Bank, N.A.*, 08 Civ. 10145,

2009 WL 5178654, *5 (S.D.N.Y. 2009). If the court were to accept the plaintiffs' claim that the loan documents were forged, the court's ruling would necessitate a finding that the Judgment of Foreclosure and Sale was erroneously entered, and thus, void. "This is precisely the result that the *Rooker-Feldman* doctrine seeks to avoid." *Kropelnicki v. Siegel*, 290 F.3d at 129.

6 Indeed, in their opposition papers, the plaintiffs confirm that they are seeking to "vacate" the "tainted" foreclosure judgment and ask the court to issue a preliminary injunctions to stop the defendants from enforcing the Judgment of Foreclosure and Sale.

Moreover, the state court Judgment of Foreclosure and Sale was entered five months before the plaintiffs filed the instant federal action, thus satisfying the final *Rooker-Feldman* requirement. In sum, "it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment." *See Swiatkowski v. Citibank,* 745 F. Supp. 2d at 165. Accordingly, the Court finds that the plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and, therefore, respectfully recommends that the defendants' motions to dismiss this action be granted pursuant to Rule 12(b)(1).[7]

7 Although the court will not engage in a thorough 12(b)(6) analysis given its determination under 12(b)(1), it is worthwhile to note that the Amended Complaint sets forth numerous claims that are not viable. For example, the plaintiffs heavily rely on sections of Title 18 for which there is no private right of action. Similarly, the plaintiffs make scattered references to the 15 U.S.C. § 1692. To the extent the plaintiffs seek to assert an FDCPA claim against Ashley or JPMorgan with respect to the loan origination, the claims are certainly time barred. The closing of the loan took place in December 2007, eight years before the lawsuit was filed. 15 U.S.C. § 1692(k). Similarly, the FDCPA claims asserted against Seterus and Rosicki are time barred. The plaintiffs allegations with respect to Seterus refer to a "written dispute" that the plaintiffs sent to Seterus over three years before the complaint was filed and to its failure to respond to the plaintiffs' letters in August 2013. Pls. Mem. at 29, Sears Aff., pp 1-2, 5, 7-8, 14, Ex. B. The plaintiffs similarly refer to a letter seeking verification of the debt from Rosicki in 2011, to which it did not respond. Rosicki Mem. at 9. In addition to being time barred, the claim is without merit since the plaintiffs had waived their right to dispute the debt and seek verification under § 1692g(b). Moreover, the FDCPA claims asserted against Fannie Mae are not viable in that Fannie Mae was collecting its own debt. *See Doherty v. Citibank* F. Supp. 2d 158, 161-62 (E.D.N.Y. 2005).

*b. Other Preclusion Principles*

Moreover, the plaintiffs' federal claims are barred by ordinary preclusion principles. A court may dismiss a claim on collateral estoppel or *res judicata* grounds on a motion to dismiss. *See Wilson v. Ltd, Brands,* No. 08 CV 3431 (LAP), 2009 WL 1069165, at *4 (S.D.N.Y. Apr. 17, 2009)(granting judgment on the pleadings based on collateral estoppel); *Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds *of res judicata*).

*1. Collateral Estoppel*

***6** "[C]ollateral estoppel ... means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.,* 701 F. Supp. 2d 340, 349-50 (E.D.N.Y. 2010)(citing *Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir. 1999)) (quoting *Schiro v. Farley,* 510 U.S. 222, 232, 114 S. Ct. 783, 127 L.Ed. 2d 47 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L.Ed. 2d 552 (1979)). Specifically, "[u]nder New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action," *In re Hyman,* 502 F,3d 61, 65 (2d Cir. 2007) (citations omitted). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues. *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir. 1991)(citation omitted).

Certainly with respect to the Fannie Mae defendants, it is clear that many, if not all, of the issues were decided by the state court. Although the defendants fraud and forgery allegations were not specifically addressed at the state inquest hearing, the court allowed the plaintiffs to submit their motion seeking to vacate the Judgement of Foreclosure and Sale based on the allegedly forged documents and were advised to obtain counsel. The plaintiffs refused to do so and the court found that they had failed to establish a basis for vacating the default or setting aside the determination after inquest. The merits of their motion were decided in the state court. Accordingly, the plaintiffs had a full and fair opportunity to challenge the foreclosure proceeding on the basis of fraud, and therefore, the Court concludes that, in addition to being barred by the *Rooker-Feldman* doctrine, the plaintiffs' federal claims against the Fannie Mae defendants are also barred by collateral estoppel.

*2. Res Judicata*

Similarly, the state court proceeding also has *res judicata* effect and precludes the plaintiffs' claims in this case.[8] "In applying the doctrine of *res judicata,* [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.,* 32 F.3d 654, 657 (2d Cir, 1994). New York courts adhere to a broad transactional analysis "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Id.* (internal quotation marks and citation omitted). *Res judicata* applies in New York where "(1) there is a previous adjudication on the merits; (2) the previous action involved [the party against whom *res judicata* is invoked] or its privy; and (3) the claims involved were or could have been raised in the previous action." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt., P.C.*, 701 F. Supp. 2d 340, 351 (quoting *Whelton v. Educational Credit Mgmt. Corp.* 432 F.3d 150, 155 (2d Cir. 2005)).

8 "All litigants, including pro se plaintiffs, are bound by the principles of *res judicata." Done,* 2009 WL 2959619, at *3. "A judgment of foreclosure and sale obtained by default constitutes a decision on the merits." *Id.* at *4; *see Council v. Better Homes Depot, Inc.,* 04 CV 5620, 2006 WL 2376381, at *4 (E.D.N.Y. Aug. 16, 2006) (citing cases).

Here, the requirements for *res judicata* are met. First, the state court action, which included a Final Judgment of Foreclosure and Sale, was a previous adjudication on the merits. Second, the requirement that the "the previous action involved [the party against whom res judicata is invoked] or its privy" is also met. Ashworth was a defendant in the prior action and her daughter Dawn Sears, who appears to be the Jane Doe occupant referred to in the caption, was also served with the summons and complaint. Finally, the current fraud and conspiracy claims were or could have been raised as claims or defenses in the previous action. The crux of the plaintiffs' federal claims is that defendants improperly obtained a "tainted" Judgment of Foreclosure and Sale by concealing the fact that certain loan documents had been forged. These claims were or should have been raised in the state court foreclosure proceeding. Therefore, *res judicata* also bars the plaintiffs' claims. Accordingly, as previously stated, the Court respectfully recommends that the defendants' motions to dismiss this action be granted.

## OBJECTIONS

***7** Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se. Pro se* Plaintiff Glen Secard must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the 14-day period for filing objections. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank,* 84 F.3d 52, 60 (2d Cir, 1996).

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4398956

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (6)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Defendants Federal National Mortgage Association's and Seterus, Inc.'s Reply Memorandum in Further Support of Their Motion to Dismiss the Amended Complaint**<br>Noella ASHWORTH and Dawn Sears, Plaintiffs, v. Judith BOGGIO, et al, Defendants.<br>2015 WL 13117310 | — | E.D.N.Y. | Nov. 10, 2015 | Motion |
| **2. Reply Memorandum of Law in Further Support of Motion of Defendant JPMorgan Chase Bank, N.A. to Dismiss the Amended Complaint**<br>Noella ASHWORTH and Dawn Sears, Plaintiffs, v. Judith BOGGIO, Michael Ashley, JPMorgan Chase, Seterus, Inc., Federal National Mortgage Association, Rosicki, Rosicki and Associates, P.C., Defendants.<br>2015 WL 13117311 | — | E.D.N.Y. | Nov. 10, 2015 | Motion |
| **3. Defendant Michael Ashley's Memorandum of Law in Support of Motion to Dismiss Amended Complaint**<br>Noella ASHWORTH and Dawn Sears and Family, et al, Plaintiffs, v. Judith BOGGIO, Michael Ashley, JP Morgan Chase, Fanniemae, Seterus, Rosicki, Rosicki and Associates, P.C., et al, Defendants.<br>2015 WL 6866744 | — | E.D.N.Y. | Sep. 24, 2015 | Motion |
| **4. Memorandum of Law in Support of FRCP Rule 12(b) Motion Brought by Defendant Rosicki, Rosicki and Associates, P.C.**<br>Noella ASHWORTH and Dawn Sears and Family, Plaintiff, v. Judith BOGGIO; Michael Ashley; JPMorgan Chase; FannieMae; Seterus; Rosicki & Rosicki & Associates, P.C., Defendants.<br>2015 WL 6866747 | — | E.D.N.Y. | Sep. 05, 2015 | Motion |
| **5. Defendants Federal National Mortgage Association's and Seterus, Inc.'s Memorandum in Support of Their Motion to Dismiss the Amended Complaint**<br>Noella ASHWORTH and Dawn Sears, Plaintiffs, v. Judith BOGGIO, et al, Defendants.<br>2015 WL 6866703 | — | E.D.N.Y. | Sep. 04, 2015 | Motion |
| **6. Docket 2:15-CV-00948**<br>Ashworth et al v. Boggio et al | — | E.D.N.Y. | Feb. 20, 2015 | Docket |

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1. Ashworth v. Boggio
2016 WL 4398956 , E.D.N.Y. , July 26, 2016

*Report and Recommendation Adopted by*

2. Ashworth v. Boggio
2016 WL 4399311 , E.D.N.Y. , Aug. 15, 2016

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3902068
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Peter J. POLINSKI, Plaintiff,
v.
AVONDALE PREMIER COLLECTION, and Premiere Car Collection, an Avondale Dealership, Defedants.

No. 3:24-cv-3267-X-BT
|
Filed December 15, 2025

**Attorneys and Law Firms**

Peter J. Polinski, Marcy, NY, Pro Se.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

REBECCA RUTHERFORD, UNITED STATES MAGISTRATE JUDGE

***1** Pursuant to 28 U.S.C. § 636(b) and Special Order 3, this *pro se* civil action was referred to the United States magistrate judge for case management, including the entry of findings and a recommended disposition where appropriate. Upon review of the relevant pleadings and applicable law, the Court should **DISMISS** this case **WITH PREJUDICE** for failure to state a claim.

## I. BACKGROUND

On December 26, 2024, Peter J. Polinski proceeding *pro se* and *in forma pauperis*, filed this action against Avondale Premier Collection and Premiere Car Collection, a car dealership in Dallas, Texas. *See* ECF No. 3. Polinski alleges constitutional violations and various statutory claims arising from the dealership's refusal to finance his purchase of a Rolls Royce Ghost. *See id.*

Polinski has filed several amended complaints all alleging substantially the same claims and violations. *See* ECF Nos. 9, 12, 13. Under Federal Rules of Civil Procedure Rule 15(a), a party may amend its pleadings "once as a matter of course" before service of process. Fed. R. Civ. P. 15(a). Thereafter, a complaint may be amended only with leave of the district court. *Id.*; *see also United States ex rel. Willard v. Human Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Here, Polinski filed an amended pleading (ECF No. 9), but then submitted two additional amended complaints (ECF Nos. 12 and 13) without seeking leave of court. Ordinarily, such pleadings would have no legal effect. *See Ferris Plaza, Ltd. v. Peerless Indem. Ins. Co.*, 2010 WL 2540826, at *3 (N.D. Tex. June 22, 2010) (explaining that an amended complaint filed without leave of court had "no legal effect"). In this instance, however, the Court will liberally construe Polinski's filings and treat the most recent amended complaint (ECF No. 13), as the operative pleading.

Polinski has also filed multiple "emergency" and other motions in this case, several of which required no immediate judicial action. *See* ECF Nos. 17-25, 28-29. This pattern of repetitive and procedurally irregular filings is consistent with conduct Polinski has exhibited in other federal courts. A search of judicial dockets uncovered that Polinski has filed numerous actions in other federal courts arising from similar theories involving alleged negotiable instruments, private credit instruments, or purported constitutional violations. In a recent decision, the Court of Federal Claims noted that Polinski "has filed a dozen cases in this Court," most of which were dismissed for lack of jurisdiction, frivolity, or failure to comply with court orders, and that his filings demonstrated "a concerning pattern of meritless filings." *Polinski v. United States*, 177 Fed. Cl. 782, 786-87 (2025). The court also directed him to show cause why he should not be subject to an anti-filing injunction. *Id.* In a subsequent order, that court further admonished Polinski for "abusive litigation tactics," including the repeated filing of non-meritorious emergency motions and reliance on fabricated authority. Order and Notice, No. 25-760 (Fed. Cl. Sept. 3, 2025).

***2** These decisions underscore the repetitive nature of Polinski's filings in federal courts and the consistent judicial conclusion that his claims lack any cognizable legal basis. That same pattern is evident here. Despite multiple amended filings and an opportunity to clarify his allegations through a Magistrate Judge's Questionnaire (the "MJQ"), Polinski has not articulated any facts that would support a viable federal cause of action.

Although Polinski's amended pleading is difficult to decipher, the Court liberally construes it to assert constitutional claims under 42 U.S.C. § 1983 for alleged violations of the Fourth, Fifth, and Thirteenth Amendments, as well as statutory claims

under the Fair Credit Reporting Act (FCRA), the Equal Credit Opportunity Act (ECOA), and the Sherman Act. In addition, Polinski seeks more than $30 million in compensatory and punitive damages, arising from the dealership's alleged refusal to process or approve his credit application.

## II. LEGAL STANDARD AND ANALYSIS

### A. Legal Standard

Under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss an *in forma pauperis* complaint if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Even under the liberal construction afforded *pro se* pleadings, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although courts liberally construe *pro se* pleadings, they do not accept "conclusory allegations" or "legal conclusions masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Moreover, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006). Here, Polinski's claims rest on the assertion that a private car dealership violated his constitutional rights by denying him credit to purchase a Rolls Royce. Those allegations do not support any federal claim.

### B. Polinski's Constitutional Claims Fail for Lack of State Action

To state a § 1983 claim, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Doe ex rel. Magee v. Covington Cnty. Sch. Dist., 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir.2008)).

Polinski asserts claims under 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Thirteenth, and Fourteenth Amendment rights. The only defendants identified, however, are private parties—employees of Avondale Premier Collection—and all alleged conduct arises from a private commercial transaction involving his attempt to purchase a Rolls Royce. *See* ECF No. 13 at 5-7 (allegations concerning denial of financing). His responses to the MJQ confirm the same: he alleges exclusively private conduct and does not identify any governmental actor or any state involvement of any kind. *See* ECF No. 27 (responses throughout). Because private conduct is not actionable under § 1983, Polinski's claims fail at the threshold for lack of state action.

***3** Nor do Polinski's attempts to rely on federal regulation or database access establish state action. He contends that the dealership is federally regulated, uses DMV databases, and operates as a "de facto federal financial intermediary." ECF No. 27 at 2-3. These arguments fail as a matter of law. Private parties are not state actors merely because they are licensed or regulated by the state. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-41 (1982); *see also Johnson v. State Farm Mut. Automobile Ins. Co.*, 520 S.W.3d 92, 101 (Tex. App.—Austin 2017) ("A private party's actions should not be construed as state action simply because the private party is licensed by the state."). Likewise, extensive state or federal regulation—such as that applicable to the automobile or insurance industries—does not convert private conduct into state action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 42 (1999); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350-51 (1974).

Further, none of the limited circumstances under which private conduct may be attributed to the government apply here. The Supreme Court recognizes state action only when: (1) the private party performs a public function; (2) the state coerced or "significantly encouraged" the conduct; (3) the state is "responsible" for the private party's actions; or (4) the state is a joint participant in the challenged conduct. *See Murthy v. Missouri*, 603 U.S. 43, 55 (2024); *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' "). None of these circumstances exist here. Merely accessing government databases in the ordinary course of business or operating under state licensing requirements does not transform private parties into state actors. *See Blum*, 457 U.S. at 1011 (receipt of government

funding and extensive regulation is insufficient to transform private businesses into state actors); *see also* Rendell-Baker, 457 U.S. at 841-43 (same).

Because Polinski fails to allege any facts suggesting that Defendants acted under color of state law, all of his § 1983 claims must be dismissed.

**C. Polinski's Constitutional Claims Fail Even if State Action Were Present**

Even assuming that Defendants acted under color of state law, Polinski's constitutional claims still fail because he has not plausibly alleged the deprivation of any federally protected right. His allegations arise entirely from a private business's refusal to extend consumer credit—conduct that does not implicate the Fourth Amendment, establish a protected property interest under the Fifth Amendment, or remotely resemble involuntary servitude prohibited by the Thirteenth Amendment.

To begin, a credit application voluntarily submitted to a private business is not "seized" within the meaning of the Fourth Amendment. The Amendment protects against unreasonable government interference with an individual's possessory interests. A seizure occurs only where there is "some meaningful interference with an individual's possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). And individuals have no reasonable expectation of privacy in business or financial records they voluntarily provide to third parties. *See* *United States v. Miller*, 425 U.S. 435, 440-41 (1976) (bank records voluntarily conveyed to financial institution are not protected by Fourth Amendment); *Smith v. Maryland*, 442 U.S. 735, 743 (1979) ("[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."). The dealership's handling or denial of Polinski's application therefore cannot constitute a seizure. Likewise, Polinski has no constitutionally protected property interest in receiving credit approval. The Fifth Amendment's Takings Clause is implicated only when the government takes private property for public use. *See* *Miller*, 425 U.S. at 440-41 (no protected property interest in voluntarily submitted financial documents). A denied credit application does not deprive a person of property, and there is no constitutional right to obtain a loan on demand.

***4** Finally, Polinski's Thirteenth Amendment theory—that he was subjected to involuntary servitude because he was "forced" into litigating this case—is without merit. *See* ECF No. 27 at 8-9. To state a Thirteenth Amendment claim, a plaintiff must allege that he was subjected to "involuntary servitude," and was compelled by "the use or threatened use of physical or legal coercion" to work for another's benefit. *See* *United States v. Kozminski*, 487 U.S. 931, 952 (1988). Courts have likewise recognized that even compelled professional services in aid of the judicial process do not constitute involuntary servitude. *See, e.g.,* *United States v. Dillon*, 346 F.2d 633, 635-36 (9th Cir. 1965) ("The enforcement of civil rights by compelling the incidental giving of personal services cannot be considered an imposition of involuntary servitude."); *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015) (citation omitted) ("A § 1983 plaintiff, even if demonstrably indigent, is not entitled to appointed counsel as a matter of right."); *see also* *Gibson v. Marsh*, 710 S.W.2d 107, 109 (Tex. App.—El Paso 1986, no writ) (rejecting argument that appointed representation of a criminal defendant, even with limited compensation, violates the Thirteenth Amendment).

Here, Plaintiff does not allege that any defendant used physical force, threats of criminal sanction, or other state-imposed legal coercion to force him to work for another's benefit. He chose to file this lawsuit and to proceed without counsel, and he remains free to dismiss the case or seek representation at any time. The ordinary burdens of self-representation in civil litigation are not "servitude" within the meaning of the Thirteenth Amendment. *See* *Dillon*, 346 F.2d at 635-36; *see also* *Gibson*, 710 S.W.2d at 108-10. Polinski's involuntary servitude theory therefore "lacks an arguable basis in law" and is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

Because Polinski's allegations do not plausibly describe any constitutional violation, all of his § 1983 constitutional claims must be dismissed.

**D. Polinski's Statutory Claims Fail as a Matter of Law**

Polinski's remaining claims under the Fair Credit Reporting Act (FCRA), the Equal Credit Opportunity Act (ECOA), and the Sherman Act likewise fail because his allegations do not support any statutory violation. Although he characterizes Defendants' refusal to approve his financing application as unlawful or discriminatory, the statutes he invokes do not reach the conduct described in his complaint or in his MJQ responses.

Starting with the FCRA, Polinski alleges that Defendants violated federal law by accessing his credit report and then

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

denying his application. *See* ECF No. 13 at 6; ECF No. 27 at 11-13. But the FCRA does not regulate the denial of credit in this way. Its relevant obligations fall on "furnishers" of credit information—entities that supply information to consumer reporting agencies—not on creditors who merely pull a credit report in evaluating an application. *See* 15 U.S.C. § 1681s-2. Polinski does not allege that Defendants supplied false information to any agency or failed to correct inaccurate information. Instead, he alleges only that the dealership accessed his report and declined to extend credit, which the statute explicitly permits. *See* 15 U.S.C. § 1681b(a)(3)(A) (permissible purpose includes evaluating a consumer's eligibility for credit). His theory that his credit application is not "consumer debt" but rather a private trust instrument does not change the analysis. The statutory framework applies to precisely the kind of personal-use vehicle financing Polinski sought; nothing in the FCRA supports his contrary interpretation.

His ECOA claim fares no better. Polinski asserts that he was "discriminated" against when Defendants refused to accept his self-styled "private credit instrument" and failed to recognize him as a "lawful and original creditor." *See* ECF No. 13 at 5-7; ECF No. 27 at 14-17. The ECOA prohibits discrimination only on specific protected bases —race, color, religion, national origin, sex, marital status, age, or receipt of public-assistance income. 15 U.S.C. § 1691(a). Courts regularly reject ECOA claims where, as here, the applicant offers only disagreement with a lender's underwriting decision rather than evidence of prohibited discrimination. *See, e.g., Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 777-78 (6th Cir. 2004) (affirming dismissal where borrower "failed to present" any direct evidence of racial discrimination and could not show lender approved similar applications). Even accepting his allegations as true, a creditor's refusal to extend financing based on an applicant's unconventional theories about credit does not suggest discrimination within the meaning of the statute.

***5** Finally, Polinski's Sherman Act theory does not supply a viable federal claim. Polinski alleges that Defendants "restrain[ed] trade" by refusing to process his application and by purportedly coordinating with unnamed institutions to block the use of "non-traditional" financial instruments. *See* ECF No. 13 at 7-8; *see also* ECF No. 27 at 15-17. To state a Sherman Act claim, a plaintiff must allege "(1) [the defendants] engaged in a conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in the relevant market." *Dexon Computer, Inc. v. Cisco Sys., Inc.*, No. 5:22-CV-53-RWS-JBB, 2023 WL 2941414, at *16 (E.D. Tex. Feb. 7, 2023), report and recommendation adopted, No. 522CV00053RWSJBB, 2023 WL 2730656 (E.D. Tex. Mar. 31, 2023) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373 (5th Cir. 2014)).

Here, Polinski identifies no agreement between Defendants and any party other than himself. A single firm's independent decision regarding its own business practices—such as its underwriting criteria—does not constitute a conspiracy. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768-69 (1984). Moreover, a dealership's decision not to finance a particular transaction does not restrain trade in any relevant market. Polinski's argument that Defendants "coordinate[d] with financial clearing agents and affiliated institutions to block the use of non-traditional but lawful financial instruments" is entirely speculative and unsupported by any factual allegations. ECF No. 27 at 16-17. Such conclusory allegations of conspiracy are insufficient. *Twombly*, 550 U.S. at 555.

Taken together, these assertions reflect dissatisfaction with a private lender's decision not to extend credit, not conduct that violates federal statutory protections. Because Polinski's allegations do not state a plausible claim under the FCRA, ECOA, or Sherman Act, and because further amendment would not cure the legal defects identified, dismissal is warranted.

## III. SANCTIONS

Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. *Mendoza v. Lynaugh*, 989 F.2d 191, 195-97 (5th Cir. 1993); *see also Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802-03 (5th Cir. 2003) (a violation of any provision of Rule 11(b) justifies sanctions). *Pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). Moreover, litigants who abuse the judicial process are "not entitled to sue and appeal without paying the normal filing fees -- indeed, are not entitled to sue and appeal, period." *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir. 1989).

In light of Polinski's extensive history of meritless filings in other federal courts and the determinations made in *Polinski v. United States*, 177 Fed. Cl. 782 (2025), the Court

notes that similar patterns have emerged in this case. The Court of Federal Claims' admonitions illustrate that Polinski has repeatedly advanced legally baseless claims and has previously required judicial warnings regarding abusive filing practices. The Court should find that Polinski is a vexatious litigant and direct the clerk of the court not to accept any further actions from him unless he first obtains leave from a district or magistrate judge. *See* Fed. R. Civ. P. 11(b)(2) and (c)(1) (providing for sanctions against *pro se* litigants).

### IV. LEAVE TO AMEND

***6** "Rule 15 is a liberal standard that favors leave, but that preference has no purchase when amendment cannot cure the defect." *Ellsworth v. Dallas Texas Dep't of Veteran Affs.*, ––– F.4th ––––, 2025 WL 3239806, at *5 (5th Cir. Nov. 20, 2025) (O'Connor); *see also* *Sanders v. Deluxe*, 2025 WL 3491013, at *3 (N.D. Tex. Nov. 14, 2025) (Rutherford, J.), rec. adopted, 2025 WL 3488340 (N.D. Tex. Dec. 4, 2025) ("Ordinarily, a pro se plaintiff should be granted the opportunity to amend her complaint prior to a dismissal.") But leave to amend is not required when the plaintiff has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009).

Here, the Court sent Polinski a Magistrate Judge's Questionnaire and ordered Polinski to state all facts that support his claims in response to this questionnaire. Polinski has, therefore, pleaded his "best case," and granting leave to amend would be futile and cause needless delay. Polinski's complaint should be dismissed with prejudice.

### V. RECOMMENDATION

For the foregoing reasons, the Court should **DISMISS** this case **WITH PREJUDICE** for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

In addition, the Court should find that Polinski is a vexatious litigant and direct the clerk of the court not to accept any further actions from him unless Polinski first obtains leave from a district or magistrate judge.

SO RECOMMENDED.

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See* *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**All Citations**

Slip Copy, 2025 WL 3902068

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1. Polinski v. Avondale Premier Collection
2025 WL 3902068 , N.D.Tex. , Dec. 15, 2025

*Report and Recommendation Adopted by*

2. Polinski v. Avondale Premier Collection
2026 WL 51092 , N.D.Tex. , Jan. 07, 2026

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings**

There are no Filings for this citation.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 51092
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Peter J. POLINSKI, Plaintiff,
v.
AVONDALE PREMIER COLLECTION, and Premiere Car Collection, an Avondale Dealership, Defendant.

Civil Action No. 3:24-CV-3267-X-BT
|
Signed January 7, 2026

**Attorneys and Law Firms**

Peter J. Polinski, Marcy, NY, Pro Se.

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

BRANTLEY STARR, UNITED STATES DISTRICT JUDGE

***1** The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. (Doc. 30). Plaintiff Peter J. Polinski filed an emergency motion for reconsideration and emergency objection, which the Court collectively construes as an objection. (Docs. 32, 33). Polinski's objections are rooted in his continued assertion that the findings, conclusions, and recommendations are based on clear legal error; result in manifest injustice; and deprive him of his due process rights.

The District Court reviewed *de novo* those portions of the proposed findings, conclusions, and recommendation to which objection was made, and reviewed the remaining proposed findings, conclusions, and recommendation for plain error. Finding none, the Court **ACCEPTS** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge.

For the reasons stated in the findings, conclusions, and recommendation of the United States Magistrate Judge, and by separate judgment, the Polinski's Amended Complaint, (Doc. 13), will be **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) for failure to state a claim upon which relief may be granted.

For the reasons stated in the findings, conclusions, and recommendation of the United States Magistrate Judge, the Court **DECLARES** Peter J. Polinski a vexatious litigant and **ORDERS** Peter J. Polinski to seek leave of court by motion before filing any additional lawsuits in the Northern District of Texas.

**IT IS SO ORDERED** this 7th day of January, 2026.

**All Citations**

Slip Copy, 2026 WL 51092

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1. Polinski v. Avondale Premier Collection
2025 WL 3902068 , N.D.Tex. , Dec. 15, 2025

*Report and Recommendation Adopted by*

2. Polinski v. Avondale Premier Collection
2026 WL 51092 , N.D.Tex. , Jan. 07, 2026

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings**

There are no Filings for this citation.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**User Name:** Chaim Jaffe
**Date and Time:** Monday, July 27, 2026 9:39 AM EDT
**Job Number:** 291115967

## Document (1)

1. *Munteanu v. Vill. of Great Neck, 2026 U.S. Dist. LEXIS 140488*
   **Client/Matter:** -None-
   **Search Terms:**
   **Search Type:**

Positive
As of: July 27, 2026 1:39 PM Z

# Munteanu v. Vill. of Great Neck

United States District Court for the Eastern District of New York

June 24, 2026, Decided; June 24, 2026, Filed

CV 25-2458 (GRB) (ARL)

**Reporter**

2026 U.S. Dist. LEXIS 140488 *; 2026 LX 393480

OLIMPIADA MUNTEANU, Plaintiff, -against- VILLAGE OF GREAT NECK and BUILDING DEPARTMENT OF THE VILLAGE OF GREAT NECK, Defendants.

**Subsequent History:** Adopted by, Dismissed by *Munteanu v. Vill. of Great Neck, 2026 U.S. Dist. LEXIS 161819 (July 21, 2026)*

**Counsel:** **[*1]** For Building Department of the Village of Great Neck, Village of Great Neck, Defendants: Leigh Harris Sutton, Sutton & Smyth LLP, New York, NY; Lily Anne Ockert, LEAD ATTORNEY, SUTTON & SMYTH LLP, New York, NY.

Olimpiada Munteanu, Plaintiff, Pro se, Great Neck, NY.

**Judges:** ARLENE R. LINDSAY, United States Magistrate Judge.

**Opinion by:** ARLENE R. LINDSAY

## Opinion

**REPORT AND RECOMMENDATION**

**LINDSAY, Magistrate Judge**:

The *pro se* plaintiff, Olimpiada Munteanu ("Munteanu"), commenced this Section 1983 action on April 28, 2025, against the defendants, the Village of Great Neck ("Village") and the Building Department of the Village of Great Neck ("Building Department"). Munteanu's complaint asserts five causes of action, namely, unreasonable exercise of governmental power, infringement of property rights, violation of due process, defamation and emotional distress, all stemming from the alleged failure to issue her a building permit. ECF No. 1. Before the Court, on referral from District Judge Brown, is the defendants' motion to dismiss the plaintiff's complaint on the grounds that the plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel, time-barred by the applicable statutes of limitation, and not ripe **[*2]** for review by this Court. The defendants also contend that Munteanu has failed to exhaust her administrative remedies and that the Village is entitled to qualified immunity. For the reasons set forth below, the undersigned respectfully recommends that the motion to dismiss be granted in its entirety.

**BACKGROUND**

The facts in this section are drawn from the complaint and accepted as true for the purpose of evaluating the defendants' motion to dismiss. *See, e.g.*, *Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)*. The Court also takes judicial notice of court documents from Munteanu's prior state and federal court actions in order to describe the correct procedural posture of this case.

**A. The Instant Complaint**

Munteanu is a resident of New York residing at 14

Red Brook Terrace in Great Neck. Compl. ¶ 1. On July 30, 2021, Munteanu bought a house located at 130 Baker Hill Road in Great Neck, which she claims was in bad condition. *Id.* ¶ 2. She alleges that the house was in such bad shape the "mortgage Banque" required work to be done within the first 90 days after the mortgage was signed. *Id.* To this end, Munteanu claims that she was required to sign a "contractual note" concerning the work to be done. *Id.*

Munteanu alleges that she immediately **[*3]** showed the contractual note to the Superintendent of the Building Department but the Building Department refused to give her a "temporary permit." *Id.* ¶ 4. Fearing that she would lose her house, Munteanu started working on the house without first obtaining the requisite permits. *Id.* ¶ 5. On September 7, 2021, the Village issued a Stop Work Order. *Id.* ¶ 10; Ockert Decl. Ex. G. Munteanu stated in a related state court action that she removed the Stop Order from the front door because she didn't know it needed to stay on the door. Ockert Decl. Ex. E. Nonetheless, Munteanu now contends that Stephen N. Haramis ("Haramis"), the former Building Superintendent for the Village, damaged her reputation when he stated at a Board of Trustees meeting that she had removed the Stop Work Order. Compl. ¶ 10.

On November 18, 2021, the Village then issued a "Boarding Letter." *Id.* ¶ 5; Ockert Decl. Ex. H. The Boarding Letter stated:

> Pursuant to the Village of Great Neck Building Code Section 205-10, this letter will serve as written notice regarding the circumstances that pose a clear and imminent danger to life and property due to unsafe hazardous conditions at 130 Baker Hill Road.
>
> Demolition, construction, **[*4]** and alterations have commenced without first obtaining a building permit, plumbing permit and mechanical permit from the Building Department. Additionally, there are no records of licensed contractors, plumbers, nor electricians on file. Pictures taken reveal dangerous and unsafe conditions due to work performed without the benefit of inspection.
>
> Electrical work was performed without inspections, thereby causing the possibility of fire if not properly installed. Additionally, it is unknown if the electrical work is live. Gas work was performed with no gas tests. Gas piping that is leaking can cause an explosion. Stairs leading from the kitchen to the basement and stairs and catwalk leading from the second floor to the first floor have no railings, causing a fall risk. Debris is scattered throughout the interior and exterior of the property, causing a tripping hazard.
>
> These circumstances pose a clear and imminent danger to life and/or property due to an unsafe and hazardous condition at 130 Baker Hill Road.
>
> On November 16, 2021, the back door and two-car garage was boarded and the front door was padlocked to prohibit further work from being performed at 130 Baker Hill Road, as hazardous **[*5]** and unsafe conditions are found to exist.

*Id.* Munteanu asserts that as a result of the boarding, from November 2021 until May 2022, she was denied access to her house, which prevented her from hiring contractors needed for the renovation permit and from removing scaffolding that she had rented from Home Depot. Compl. ¶¶ 7, 8.

### B. Prior State and Federal Court Actions

According to the defendants, Munteanu has commenced fourteen lawsuits against the Village arising from the same general facts and circumstances that are alleged in the instant complaint. Munteanu first commenced two actions in the Nassau County Supreme Court. *See* Ockert Decl. Exs. A, C. In the first lawsuit commenced in

2021, Munteanu sued Haramis for damages allegedly stemming from the Building Department's failure to issue her a permit and for having boarded up her house in accordance with the Village Building Code. *Id.* Ex. A. The action was dismissed by the Hon. Eileen C. Daly-Sapraicone, on March 14, 2023. *Id.* Ex. B. In her decision, Judge Daly-Sapraicone noted:

> It is undisputed that on August 16, 2021, Defendant performed a site inspection of the premises and observed workers and a van associated with Francis General Construction, **[*6]** along with debris evincing construction work was being performed. The construction work was being performed without a permit issued by the Building Department for the Village. Defendant issued a Violation on August 19, 2021. On August 31, 2021, another Violation was issued to the Plaintiff after another site inspection revealed debris and a dumpster consistent with construction at the premises. On September 7, 2021, a Stop Work Order was issued for Plaintiff's repeated violations. On September 13, 2021, the Stop Work Order was removed from the premises and a Summons was issued. This Summons charged Plaintiff with a violation of the Village Code for removing the Stop Work Order and directed Plaintiff to appear in Village Court in October, 2021. On September 27, 2021, the Nassau County police were contacted to shut down work being done on the subject premises. It is further undisputed that Plaintiff refused to get a licensed general contractor, a plumber licensed with the Village and electrician licensed with the Town of North Hempstead. In October 2021, Plaintiff plead guilty to a violation of the Village Code for removing the Stop Work Order placard and paid the corresponding fine. **[*7]** On November 15, 2021, the Building Department performed another inspection and it was revealed that construction work continued to be performed at said premises, still with no permit on file, resulting in the issuance of an additional summons to Plaintiff. A trial was held in Village Court, for which Defendant was present, and Plaintiff was found guilty of the violation and directed to pay the fine. On November 16, 2021, the subject premises were deemed to constitute unsafe and hazardous conditions that posed a clear and imminent dangers to the life and property of the general public and the subject premises was boarded up in accordance with the Building Code.

*Id.* In addition, in dismissing the complaint, Judge Daly-Sapraicone held, among other things that, "the grant or denial of a building permit . . . may not form the basis for liability in tort" and that Munteanu had failed to exhaust her administrative remedies. *Id.*

In her second Nassau County Supreme Court action, Munteanu again sued Haramis, along with three other Building Department employees and an attorney for the Village, alleging that she had suffered damages stemming from their failure to issue her a permit and the house **[*8]** being boarded *Id.* Ex. C. The second action was dismissed on the grounds that the defendants were immune from liability because they were acting in their official capacities. *Id.* Ex. D.

Thereafter, Munteanu commenced four actions in the Nassau County District Court bearing Index Nos. CV-013588-23, CV-000159-24, CV-000160-24 and CV-002546-24. *See id.* Ex. E; ECF No. 10.[1] According to the defendants, all of the Nassau County District Court actions were dismissed on the merits. *See e.g.* Ockert Decl. Exs. F. For example, in the action bearing index number CV-000159-24, Munteanu, as she has in this case, sued the Village and the Building Department for Unreasonable Exercise of Governmental Power, Infringement of Property Rights; Violation of Due Process, Defamation, Emotional Distress, Negligence and Impending Ability to Obtain

[1] The defendants note that Munteanu stated in her action bearing Index No.: cv-010664-24 that she was seeking to relitigate the previously dismissed action of cv-000160-24.

Permit. *Id.* Ex. E. The action was dismissed by the Hon. Norman A. Sammut on June 11, 2024, for failure to comply with General Municipal Law Section 50-e. *Id.* Ex. F. Specifically, Judge Summut found that Munteanu had failed to timely file a Notice of Claim with the Village requiring dismissal of that action.

Despite having her first six lawsuits dismissed, Munteanu then commenced four additional actions **[*9]** in the county district court bearing Index Nos. CV-013432-24, CV-013433-24, CV-003598-25 and CV-003599-25, all stemming from the same general facts and circumstances alleged in this case. Defs.' Mem. at 5. According to the defendants, prior to filing the motion pending before this Court, actions CV-013432-24, CV-003598-25 and CV-003599-25 were dismissed on the merits but the defendants were still awaiting decision on action cv-013433-24. Finally, Munteanu commenced two actions in the Small Claims Court based on the same facts, one of which was dismissed and one of which was filed the week the defendants filed the instant motion to dismiss. *Id.*

## DISCUSSION

### A. Standards of Review

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." *See Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010)*, aff'd, *446 F. App'x 360 (2d Cir. 2011)* (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010)*). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*, in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id. at 679*. Though "legal **[*10]** conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id. at 678* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (internal citations omitted)).

"A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Florimon v. Allstate Ins. Co., 616 F. Supp. 3d 180, 185 (D. Conn. 2022)* (citing *McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007)*). However, "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230-31 (2d Cir. 2016)*. *Id.*

### B. The Building [*11] Department

As a threshold matter, the undersigned respectfully recommends that the claims against the Building Department be dismissed since the Building Department is not a legal entity that can be subject to suit under § 1983. *See Wozar v. Campbell, 763 F. Supp. 3d 179, 198 (D. Conn. 2025)* (dismissing action against municipal police department); *Brunson v. City of New York Dep't of Correction*,

No. 16 CV 1471 RRM LB, 2016 WL 4203485, at *3 (E.D.N.Y. Aug. 9, 2016) (finding that the New York City Department of Correction, as an agency of the City of New York, does not have a legal identity separate and apart from the municipality and cannot be sued).

### C. Res Judicata and Collateral Estoppel

The Court turns next to the Village's argument that the actions should be dismissed based on the doctrines of *res judicata* and collateral estoppel. "A court may dismiss a claim on *res judicata* or collateral estoppel grounds on either a motion to dismiss or a motion for summary judgment." *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc., 757 F. Supp. 2d 218, 223 (E.D.N.Y. 2010)*.

#### 1. Res Judicata

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *McCluskey v. Lopez, No. 24-381, 2024 U.S. App. LEXIS 32301, 2024 WL 5182876, at *4 (2d Cir. Dec. 20, 2024)* (citing *TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014)* (quotation marks omitted)). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999)*. "'To **[*12]** prove the affirmative defense of *res judicata*, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *McCluskey, 2024 WL 5182876 at *4*. However, "'[i]n determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive.'" *Umar Oriental Rugs, Inc., 757 F. Supp. 2d at 224* (citing *Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997)*). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id.*

Here, there is no question that the state court actions described above not only involve the same facts and allege the same type of wrongful conduct, but the cases also involve the exact same "transaction." In her first Nassau County Supreme Court lawsuit, Munteanu sued Haramis for damages allegedly stemming from the Building Department's failure to issue her a permit and for having boarded up her house in accordance with Village Building Code. **[*13]** Ockert Decl. Ex. A. Munteanu alleged in that action that she had attempted to access her property, but her phone calls and emails to the Village requesting access remained unanswered - in other words, the Village had denied her access to her property without explanation. *Id.* In her second Nassau County Supreme Court lawsuit, Munteanu sued Haramis and four other Village employees seeking damages for the same set of events. *Id.* Ex. C. Although, read liberally, Munteanu was only seeking a declaratory judgment and damages for defamation in her first two state court actions, her claims for unreasonable exercise of governmental power, infringement of property rights, violation of due process and emotional distress, could have been brought in those prior actions as they involved the same events, evidence and factual issues. *Umar Oriental Rugs, Inc., 757 F. Supp. 2d at 224* (finding plaintiff's new negligence claim barred by the doctrine of *res judicata* because it was based on the same series of facts and events as the claims brought in the prior action): *see also Sure-Snap Corp. v. State St. Bank and Trust Co., 948 F.2d 869, 873-75 (2d Cir.1991)* ("[a] party may not avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy").

Moreover, in at least one of the Nassau County District Court **[*14]** actions, Munteanu did sue the Village and the Building Department for the unreasonable exercise of governmental power, infringement of property rights, violation of due process, defamation, emotional distress, negligence and impending ability to obtain a permit, once again, complaining about the Building Department's failure to give her a permit for work at 130 Baker Hill Road, the Stop Work Order and the subsequent boarding of her house. Id. Ex. E. Accordingly, *res judicata* applies here because the fundamental basis of all of the lawsuits have remained the same.

In addition, the parties are in privity. "A privity analysis for *res judicata* purposes is broader than a traditional privity analysis." *Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 380 (S.D.N.Y. 1999)*, aff'd, *207 F.3d 105 (2d Cir. 2000)*. In this Circuit, privity has been found when a non-party's interests in a prior litigation is virtually identical. *Id.* Indeed, where, as here, there is a close or significant relationship to a defendant previously sued, *res judicata* is available to a newly named defendant. *Id.* ("Village officials are entitled to *res judicata* because government officials sued in their official capacities are generally considered to be in privity with the governmental entity that they serve."). As **[*15]** such, the Village and the Building Department are entitled to *res judicata* despite the fact that they were not named in the first two state court actions.

Finally, all three of the lawsuits, offered by the defendants as examples, were adjudicated on the merits. *See Berrios v. N.Y. Hous. Auth., 564 F.3d 130, 134 (2d Cir. 2009)*("[T]he dismissal for failure to state a claim is a final judgment on the merits and thus has *res judicata* effects.). In sum, the undersigned concludes that the entire case is barred by the doctrine of *res judicata* and recommends that the defendants' motion to dismiss be granted.

**2. Collateral Estoppel**

It warrants mention that even if the defense of *res judicata* was unavailable, Munteanu would be precluded from relitigating many, if not all, of the issues she has raised in her federal action under the doctrine of collateral estoppel. "'[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has . . . been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Ashworth v. Boggio*, No. CV 15-948 (JFB)(ARL), 2016 WL 4398956, at *6 (E.D.N.Y. July 26, 2016), report and recommendation adopted, No. 15 CV 948 JFB ARL, 2016 WL 4399311 (E.D.N.Y. Aug. 15, 2016) (quoting *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 349-50 (E.D.N.Y. 2010)*(citing *Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999)*) (quoting *Schiro v. Farley, 510 U.S. 222, 232, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994)*). "'Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants **[*16]** from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" *Id.* (citing *Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)*).

"'Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.'" *Id.* (citing *In re Hyman*, 502 F,3d 61, 65 (2d Cir. 2007) (citations omitted).[2] In this case, it is clear that many, if not all, of the issues presently raised by Munteanu were decided by the state court. For example, in this lawsuit, Munteanu

[2] The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues.'" *Ashworth*, 2016 WL 4398956, at *6 (citing *Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991)*(citation omitted)).

claims that her property was unreasonably seized and access to her house was restricted without any explanation. Yet, in direct contradiction to those claims, Judge Daly-Sapraicone already determined that Haramis had performed a site inspection of the premises and observed construction work being performed without a permit. Ockert Decl. Ex. A. Judge Daly-Sapraicone also described a number of interactions with Munteanu that ultimately led to the boarding of her home. *Id.* In fact, Judge Daly-Sapraicone established **[*17]** that a Stop Work Order had been issued for repeated violations, that Munteanu was aware of the Stop Work Order and had even pleaded guilty to removing it from the front door, and that the premises were deemed unsafe after Munteanu refused to hire a licensed general contractor, electrician or plumber.

Finally, Munteanu had a full and fair opportunity to challenge the state courts' findings. Therefore, the Court concludes that, in addition to being barred by the doctrine of *res judicata*, Munteanu's federal claims are also barred by collateral estoppel. The undersigned, therefore, respectfully recommends that the complaint be dismissed.

**D. Remaining Arguments**

The defendants also contend that (1) the defamation claim is barred by the one year statute of limitations applicable to torts, *see* *N.Y. C.P.L.R. § 215(3)*; (2) the unreasonable exercise of governmental power claim is barred by the four month statute of limitations applicable to Article 78 proceedings, *see* *C.P.L.R. §7801*; (3) the defendants are entitled to qualified immunity as their acts were discretionary, *see* *Rottkamp v. Young, 21 A.D.3d 373 (2d Dept. 1964)* (neither municipality nor the building inspector liable for discretionary act); and Munteanu's claims are barred as she failed to avail herself of all administrative remedies. **[*18]** Although there appears to be merit to these arguments, the undersigned will not address the additional contentions given the Court's determination that the suit is barred by the doctrine of *res judicata* and collateral estoppel.

**OBJECTIONS**

A copy of this Report and Recommendation is being served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See *28 U.S.C. § 636(b)(1)*; *Fed R. Civ. P 72*; *Mejia v. Roma Cleaning, Inc., No. 17-3446, 751 Fed. Appx. 134, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018)* ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010)*; *Beverly v. Walker, 118 F.3d 900, 902 (2d Cir. 1997)*.

Dated: Central Islip, New York

June 24, 2026

/s/ Arlene R. Lindsay

ARLENE R. LINDSAY

United States Magistrate Judge

---

End of Document